## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

               Plaintiff,

         v.

Case No. _____

FOUR C FARMS LLC
W4780 Lakeville Road
Walworth, WI 53184

**COMPLAINT**

RICHARD DANIEL CORNUE
W4780 Lakeville Road
Walworth, WI 54184

MARY JEAN DANE-CORNUE
W4780 Lakeville Road
Walworth, WI 54184

JUNG SEED COMPANY
c/o David Wild, Registered Agent
335 South High Street
Randolph, WI 53957

CAPITAL ONE BANK (USA), N.A.
c/o Messerli & Kramer
3033 Campus Drive, STE 250
Plymouth, MN 55441

               Defendants.

Comes now the plaintiff, the United States of America, acting through the Farm Service

Agency, United States Department of Agriculture, by Gregory J. Haanstad, United States

Attorney for the Eastern District of Wisconsin, and Michael A. Carter, Assistant United States

Attorney for said District and for its cause of action alleges that:

      1.      This is a civil action brought by the United States of America under the provisions

of 28 U.S.C. § 1345 to foreclose upon chattel and real estate held by Defendants Four C Farms

LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue.

      2.      Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue executed and delivered to plaintiff promissory notes, secured by a security agreement and a mortgage upon real estate within the jurisdiction of this court.

      3.      Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue executed the following promissory notes:

| Date | Amount | Exhibit No. (hereto annexed) |
|------|--------|------------------------------|
| November 14, 2014 | $300,000 | A |
| November 14, 2014 | $300,000 | B |

      4.      To secure said notes, Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue executed and delivered to plaintiff a security agreement, which is described as follows:

| Date | Exhibit No. (hereto annexed) |
|------|------------------------------|
| November 14, 2014 | C |

      5.      A Financing statement was duly filed for the record:

| Date | Exhibit No. (hereto annexed) |
|------|------------------------------|
| November 3, 2014 | D |

      6.      By virtue of said notes, financing statement, and security agreement, plaintiff has a security interest in all farm products, crops, livestock, and farm equipment owned by defendants Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue.   Said property includes, but is not limited to, the property described in the security agreement that is attached hereto.

7. Said property is in the possession of defendants Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue, and is located at W4780 Lakeville Road, Walworth, Wisconsin 53184.

8. To further secure said notes, defendants Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue executed and delivered to plaintiff the following duly recorded mortgage upon certain real estate within the jurisdiction of this court:

| Date | Exhibit No. (hereto annexed) |
|---|---|
| November 14, 2014 | E |

9. Defendants failed to make the payments required by the above loan instruments and therefore have defaulted.

10. Defendants Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue, being in default, plaintiff served upon them a Notice of Acceleration of Indebtedness and Demand for Payment, a copy of which is hereto annexed as Exhibit F.

11. Plaintiff has made the following payment as permitted by the provisions of the mortgage and said payment has become a part of the mortgage indebtedness:

Title Search: $350.00

12. Defendants Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue owe plaintiff under the provisions of the notes and mortgage a balance of $630,263.31, as of October 30, 2017, with interest accruing thereafter at the daily rate of $47.8969. This amount is computed as follows: principal of $594,551.89, and interest of $35,361.42. A Statement of Account is attached hereto as Exhibit G.

13. The other defendants may have interests in the mortgaged premises but any such

3

interests are junior and subordinate to the interests of plaintiff.

WHEREFORE, plaintiff prays that an accounting be taken under the direction of this Court of what is due for principal and interest on the notes, security agreement and mortgage, and that a decree be entered as follows:

(a)     That defendants Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue pay to plaintiff the total of $630,263.31, together with interest from October 30, 2017, at the rate of $47.8969 per day computed as provided in the notes, security agreement and mortgage, up to the date on which the decree is entered, plus interest thereafter according to law, costs, disbursements, and expenses;

(b)     Or in default of such payment, that all legal right, title, and interest that Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue have in the property described in said mortgage, less than any property released, be sold at public sale in accordance with 28 U.S.C. §§ 2001-2003, and that the amounts due to plaintiff be paid out of the proceeds of the sale pursuant to the lien priority of each mortgage;

(c)     That the interest Four C Farms LLC, Richard Daniel Cornue, and Mary Jean Dane-Cornue have in the property described in said security agreement be sold at a public or private sale in accordance with 28 U.S.C. § 2004 and that the amounts due to the plaintiff be paid out of the proceeds of the sale;

(d)     That the defendants and all persons claiming or who may claim by, from, or under them be absolutely barred and foreclosed from all rights and equity of redemption in the property;

(e)     That if the proceeds of the sales exceed the sum of money to be paid to plaintiff,

4

any such excess be deposited with the Clerk of this Court subject to further orders of the Court;

(f)     For such other and further relief as is just.

Dated this 8th day of February, 2018.

                                        GREGORY J. HAANSTAD
                                        United States Attorney

                        By:     s/Michael A. Carter
                                MICHAEL A. CARTER
                                Assistant United States Attorney
                                Wisconsin State Bar No. 1090041
                                Office of the United States Attorney
                                Federal Building, Room 530
                                517 East Wisconsin Avenue
                                Milwaukee, Wisconsin   53202
                                Telephone:   414-297-1700
                                Fax: 414-297-4394
                                Michael.A.Carter@usdoj.gov

5

This form is available electronically.

*Form Approved - OMB No. 0560-0237*
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| FSA-2026<br>(12-05-12) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name<br>FOUR C FARMS LLC | 2. State<br>WISCONSIN | 3. County<br>WALWORTH |
|---|---|---|

| 4. Case Number<br>58-064-█████7344 | 5. Fund Code<br>44 | 6. Loan Number<br>01 | 7. Date<br>November 14, 2014 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE<br>D-OL-BF-Reg-7 YR | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☒ Initial loan    ☐ Conservation easement    ☐ Deferred payments

☐ Consolidation    ☐ Rescheduling    ☐ Debt write down

☐ Subsequent loan    ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* MONROE, WISCONSIN or at such other place as the Government may later designate in writing, the principal sum of *(b)* THREE HUNDRED THOUSAND AND NO/100 ******************************* ******************************** dollars *(c)* ($ 300,000.00 ********************** , plus interest on the unpaid principal balance at the RATE of *(d)* TWO AND ONE-EIGHTH ***************************************** percent *(e)* 2.125 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* 07

installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 6,400.00 | 11/14/2015 | $ 25,000.00 | 11/14/2016 |
| $ n/a | n/a | $ n/a | n/a |
| $ n/a | n/a | $ n/a | n/a |
| $ n/a | n/a | $ n/a | n/a |

and *(d)* $ 25,000.00 thereafter on the *(e)* November 14th of each *(f)* YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* 07 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial _____ Date 11-14-2014

**EXHIBIT A**

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| n/a | $ n/a | n/a % | n/a | n/a | n/a |
| n/a | $ n/a | n/a % | n/a | n/a | n/a |
| n/a | $ n/a | n/a % | n/a | n/a | n/a |
| n/a | $ n/a | n/a % | n/a | n/a | n/a |
| n/a | $ n/a | n/a % | n/a | n/a | n/a |
| n/a | $ n/a | n/a % | n/a | n/a | n/a |
| n/a | $ n/a | n/a % | n/a | n/a | n/a |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____ Date _11-14-2014_

MDC
11-14-2014

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

FOUR C FARMS LLC

Richard Daniel Cornue, Member, on behalf of the FOUR C FARMS LLC AND
As Individual Acknowledging Personal Liability

Mary Jean Dane Cornue, Member, on behalf of the FOUR C FARMS LLC AND
As Individual Acknowledging Personal Liability

W4780 Lakeville RD
Walworth, WI  53184

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

Form Approved - OMB No. 0560-0237
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| FSA-2026 (12-05-12) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name FOUR C FARMS LLC | 2. State WISCONSIN | 3. County WALWORTH |
|---|---|---|

| 4. Case Number 58-064-▉▉7344 | 5. Fund Code 41 | 6. Loan Number 02 | 7. Date November 14,2014 |
|---|---|---|---|

**8. TYPE OF ASSISTANCE**
D-FO-BF-Reg

**9. ACTION REQUIRING PROMISSORY NOTE:**

- [x] Initial loan
- [ ] Conservation easement
- [ ] Deferred payments
- [ ] Consolidation
- [ ] Rescheduling
- [ ] Debt write down
- [ ] Subsequent loan
- [ ] Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* MONROE, WISCONSIN or at such other place as the Government may later designate in writing, the principal sum of *(b)* THREE HUNDRED THOUSAND AND NO/100 ******************************* ******************************* dollars *(c)* ($ 300,000.00 ********************** , plus interest on the unpaid principal balance at the **RATE** of *(d)* THREE AND THREE-FOURTHS ******************************************* percent *(e)* 3.750 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* 30 installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 11,250.00 | 11/14/2015 | $ 17,145.00 | 11/14/2016 |
| $ n/a | n/a | $ n/a | n/a |
| $ n/a | n/a | $ n/a | n/a |
| $ n/a | n/a | $ n/a | n/a |

and *(d)* $ 17,145.00 thereafter on the *(e)* November 14th of each *(f)* YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* 30 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial _____ Date 11-14-2014

**EXHIBIT B**

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>*(MM-DD-YYYY)* | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>*(MM-DD-YYYY)* |
|---|---|---|---|---|---|
| n/a | $ n/a | n/a    % | n/a | n/a | n/a |
| n/a | $ n/a | n/a    % | n/a | n/a | n/a |
| n/a | $ n/a | n/a    % | n/a | n/a | n/a |
| n/a | $ n/a | n/a    % | n/a | n/a | n/a |
| n/a | $ n/a | n/a    % | n/a | n/a | n/a |
| n/a | $ n/a | n/a    % | n/a | n/a | n/a |
| n/a | $ n/a | n/a    % | n/a | n/a | n/a |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _(signature)_       Date _11-14-2014_

_(signature)_ MDC    _11-14-2014_

FSA-2026 (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

FOUR C FARMS LLC

Richard Daniel Cornue, Member, on behalf of the FOUR C FARMS LLC AND
As Individual Acknowledging Personal Liability

Mary Jean Dane Cornue, Member, on behalf of the FOUR C FARMS LLC AND
As Individual Acknowledging Personal Liability

W4780 Lakeville RD
Walworth, WI 53184

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Public Burden Statements).*

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
|---|---|---|
| (09-03-10) | Farm Service Agency | |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** *dated (a)* __November 14__ , **2014** , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **FOUR C FARMS LLC, RICHARD DANIEL CORNUE, MARY JEAN CORNUE**

(Debtor), whose mailing address is (c) W4780 LAKEVILLE RD, WALWORTH, WI 53184-5902

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

**EXHIBIT C**

Initial _____ Date __11-14-2014__

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| | | | All crops and inventories where evergrown |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _Cill_ Date _11-14-2014_

NDC                11-14-2014

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* ___Wisconsin___

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Combine w/heads | Case IH | 1680 | | | 026217 |
| 2 | 1 | Tractor | Case IH | 7140 | | | JJA0025551 |
| 3 | 1 | Tractor | IH | 966 | | | 2510175013720 |
| 4 | 1 | Skidloader w/attachments | Bobcat | S250 | | | |
| 5 | 1 | Uni System-Harvestor | | 802C | | | 98700 |
| 6 | 1 | Corn Planter | Kinze | 8-row | | | |
| 7 | 1 | Disc | IH | 496 22' | | | |
| 8 | 1 | Soil Saver | Glencoe | 9 Shank | | | |
| 9 | 1 | Cultimulcher | Brillion | 15' | | | |
| 10 | 1 | Cultivator | JD | 22' | | | |
| 11 | 1 | Plow | IH | 720 5-18" | | | |
| 12 | 1 | Sprayer | Demco | | | | |
| 13 | 1 | Stalk Chopper | | | | | |
| 14 | 1 | Forage Box | Gehl | 980 | | | |
| 15 | 1 | Forage Box | H&S | 7+4 | | | |
| 16 | 1 | Gravity Wagon | Brent | 550 | | | |
| 17 | 2 | Gravity Wagons | Kilbros & Cory | | | | |
| 18 | 1 | Manure Spreader | Knight | 8124 | | 2003 | |
| 19 | 1 | TMR Wagon | Triolet | 1200 | | | 04961 |
| 20 | 1 | Mixer Mill | Gehl | 135 | | | |
| 21 | 1 | Grain Drill | JD | 8300 | | | |
| 22 | 14 | Calf Hutches | | | | | |
| 23 | 1 | Skid Loader to be purchased | | | | | |

Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _MDC_ Date _11-14-2014_

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

Wisconsin                                              :

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 11 | Dairy Cattle - Calves - Heifer | | | | | |
| 2 | 90 | Dairy Cattle-Brdg. - Cows - Cows to be purchased | | | | | |
| 3 | 16 | Dairy Cattle-Brdg. - Cows | | | | | |
| 4 | 6 | Dairy Cattle-Brdg. - Heifers - Bred | | | | | |
| 5 | 4 | Dairy Cattle-Brdg. - Heifers - Open - Yearlings | | | | | |
| 6 | 10 | Dairy Cattle-Brdg. - Heifers - Open - Heifers to be purchased | | | | | |

Initial _GLL_   Date _11-14-2014_

MDC   _11-14-2014_

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

Proceeds of dairy assignment and all FSA program payments

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _____  Date 11-14-2014

**4. IT IS FURTHER AGREED THAT:**

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _____  Date 11-14-2014

MDC

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____

FOUR C FARMS LLC

6B. *(Date)* 11-14-2014

_____

RICHARD DANIEL CORNUE

*(Date)* 11-14-2014

_____

MARY JEAN CORNUE

*(Date)* 11-14-2014

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).*

*To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

# UCC FINANCING STATEMENT



| NAME & PHONE OF CONTACT |
| --- |
| Cathy Calvert |
| USDA Farm Service Agency |
| cathy.calvert@wi.usda.gov |
| 6083254195 Ext. 115 |

| SEND ACKNOWLEDGMENT TO: |
| --- |
| Cathy Calvert |
| USDA Farm Service Agency |
| cathy.calvert@wi.usda.gov |

Filing # - 140014293827
Filed - 11/3/2014 3:42:28 PM
Wisconsin Department of Financial Institutions

**Debtor's Exact Full Legal Name**

| OR | Organization's Name FOUR C FARMS LLC | | | | |
| --- | --- | --- | --- | --- | --- |
| | Individual's Surname | First Personal Name | Additional Name(s)/Initial(s) | | Suffix |
| Mailing Address W4780 LAKEVILLE ROAD | City WALWORTH | State WI | Postal Code 53184 | | Country UNITED STATES |

| OR | Organization's Name | | | | |
| --- | --- | --- | --- | --- | --- |
| | Individual's Surname CORNUE | First Personal Name RICHARD | Additional Name(s)/Initial(s) DANIEL | | Suffix |
| Mailing Address W4780 LAKEVILLE ROAD | City WALWORTH | State WI | Postal Code 53184 | | Country UNITED STATES |

| OR | Organization's Name | | | | |
| --- | --- | --- | --- | --- | --- |
| | Individual's Surname CORNUE | First Personal Name MARY | Additional Name(s)/Initial(s) JEAN DANE | | Suffix |
| Mailing Address W4780 LAKEVILLE ROAD | City WALWORTH | State WI | Postal Code 53184 | | Country UNITED STATES |

**Secured Party's Name (or name of Total Assignee or Assignor S/P)**

| OR | Organization's Name UNITED STATES OF AMERICA ACTING THRU FARM SERVICE AGENCY | | | | |
| --- | --- | --- | --- | --- | --- |
| | Individual's Surname | First Personal Name | Additional Name(s)/Initial(s) | | Suffix |
| Mailing Address 1627 4th AVE W, STE 1 | City MONROE | State WI | Postal Code 53566 | | Country UNITED STATES |

**This financing statement covers the following collateral:**

ALL CROPS, LIVESTOCK, FARM PRODUCTS, EQUIPMENT, CERTIFICATES OF TITLE, GOODS, SUPPLIES, INVENTORY, ACCOUNTS, DEPOSIT ACCOUNTS, SUPPORTING OBLIGATIONS, PAYMENT INTANGIBLES, GENERAL INTANGIBLES, INVESTMENT PROPERTY, CROP INSURANCE INDEMNITY PAYMENTS, AND ALL ENTITLEMENTS, BENEFITS, AND PAYMENTS FROM ALL STATE AND FEDERAL FARM PROGRAMS;

ALL PROCEEDS, PRODUCTS, ACCESSIONS, AND SECURITY ACQUIRED HEREAFTER.

THE SECURITY INTEREST PERFECTED SECURES A FUTURE ADVANCE CLAUSE AND THE SECURITY AGREEMENT CONTAINS AN AFTER-ACQUIRED PROPERTY CLAUSE.

DISPOSITION OF SUCH COLLATERAL IS NOT HEREBY AUTHORIZED.

**EXHIBIT D**

**Alternative Designation:**

Not Applicable

**Financing Statement Relates To:**

Not Applicable

**Optional Filer Reference Data:**

Four C Farms LLC UCC Initial Filing

**Miscellaneous:**

Not filled in.

**Collateral is:**

No Designation

**Form Type:**

UCC Financing Statement



Doc # 896326
Recorded
December 11, 2014 10:22 AM

DONNA R PRUESS
REGISTER OF DEEDS
WALWORTH COUNTY, WI
Fee Amount: $30.00
Total Pages: 7

## MORTGAGE FOR WISCONSIN

| Document Number | Document Title |
| --- | --- |

**Name & Return Address:**
**Green County Farm Service Agency**
**1627 4th AVE W, STE 1**
**Monroe, WI 53566**

Form Approved - OMB No. 0560-0237

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial of loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

**Recording Area**

**Parcel Identification Number (PIN):**
**IL 3000006, IL 3000007**
**IA 116100001**

THIS MORTGAGE (**"instrument"**) is made November 14, 2014. The mortgagor is FOUR C FARMS LLC (**"Borrower"**) whose mailing address is W4780 Lakeville Road, Walworth, WI 53184. This instrument is given to the United States of America, acting through the Farm Service Agency, United States Department of Agriculture (**"Government"**) located at Green County Farm Service Agency, 1627 4th AVE W, Ste 1, Monroe, WI 53566.

This instrument secures the following promissory notes, assumption agreements and/or shared appreciation agreements (collectively called **"Note"**), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest |
| --- | --- | --- |
| 11/14/2014 | $300,000.00 | 3.750% |
| 11/14/2014 | $300,000.00 | 2.125% |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all proceeds for the loan or loans evidenced by the above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government, and (4) the obligations and covenants of Borrower set forth in this instrument, the Note, and any other loan agreements.

**EXHIBIT E**

*This Instrument Was Drafted By The United States Department Of Agriculture, Farm Service Agency*

Initial(s) _____ Date 11-14-2014    MDC 11-14-2014    **FSA 2029 WI (07-15-14) Page 1 of 6**

*The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the bases of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department. (Not all prohibited bases will apply to all programs and/or employment activities.) Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). Individuals who are deaf, hard of hearing, or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 or (800) 845-6136 (in Spanish).*

*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov. USDA is an equal opportunity provider and employer.*

Case 2:18-cv-00212-PP   Filed 02/08/18   Page 1 of 7   Document 1-5

Mortgage for Wisconsin (Continued)

In consideration of any loan made by the Government under the Consolidated Farm and Rural Development Act, 7 U.S.C. §1921 et seq. as evidenced by the Note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property situated in the State of Wisconsin, County of Walworth:

SEE ATTACHED LEGAL DESCRIPTION

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions that are now or hereafter included in, affixed, or attached to "**the property**."

Borrower COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.  **Payment**. Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.  **Fees**. Borrower shall pay to the Government such fees and other changes that may now or later be required by Government regulations.

3.  **Application of payments**. Unless applicable law or Government's regulations provide otherwise, all payments received by Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4.  **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.  **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower

Initial(s) _____ Date _1-14-2014_

Mortgage for Wisconsin (Continued)

will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.    **Insurance**. Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. §4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7.    **Advances by Government**. The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.    **Protection of lien**. Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the Note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9.    **Authorized purposes**. Borrower shall use the loan evidenced by the Note solely for purposes authorized by the Government.

10.    **Repair and operation of property**. Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner.  Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.    **Legal compliance**. Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.    **Transfer or encumbrance of property**. Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.    **Inspection**. At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.    **Hazardous substances**. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

Initial(s) _____ Date _11-14-2014_

Case 2:18-cv-00212-PP    Filed 02/08/18    Page 3 of 7    Document 1-5

Mortgage for Wisconsin (Continued)

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise, and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant

Initial(s) _[signature]_ Date _1-14-2014_

MDC _1-14-2014_

Mortgage for Wisconsin (Continued)

and convey that Borrower interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger**. If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence**. Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy**. Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents**. Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Application of foreclosure proceeds**. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

Initial(s) _Jill_ Date _11-14-2014_

MDC _11-14-2015_ /MDC

Doc # 896326

Mortgage for Wisconsin (Continued)

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

FOUR C FARMS LLC

_____
Richard Daniel Cornue, Member, on behalf of the FOUR C FARMS LLC AND
As Individual Acknowledging Personal Liability

_____
Mary Jean Dane Cornue, Member, on behalf of the FOUR C FARMS LLC AND
As Individual Acknowledging Personal Liability

STATE OF WISCONSIN
COUNTY OF ~~WALWORTH~~  Rock   } ss.

The foregoing instrument was acknowledged before me this 14th of November, 2014 by Richard Daniel Cornue and Mary Jean Dane Cornue, Members, on behalf of FOUR C FARMS LLC, a Limited Liability Company.

My commission expires: 9-6-15

_____
NOTARY PUBLIC

ANGELA D. STEWART
NOTARY
PUBLIC
STATE OF WISCONSIN

Initial(s) _____ Date 11-14-2014

MDC  11-14-2014

FSA 2029 WI (07-15-14) Page 6 of 6

Parcel 1:

Part of the South ½ of the Southwest ¼ of Section 30, in Township 1 North, Range 17 East, of the Fourth Principal Meridian, being described as follows: Beginning at the Northwest corner of said South ½ of the Southwest ¼; thence North 89º 44' 55" East along the North line thereof, 1,366.44 feet; thence South 01º27' 58" East, 1,008.75 feet to the North line of Lot 1 of Certified Survey Map No. 1161, being part of the said Southwest ¼, according to the plat thereof recorded July 16, 1981 as Document No. 70985; thence North 89º57' 58" West along said North line 135.25 feet to the Northwest corner thereof; thence South 00º 19' 47" East along the West line thereof, 312.61 feet to the South line of the said South ½ of the Southwest ¼; thence South 89º 41' 02" West along said South line 1,231.92 feet to the Southwest corner thereof; thence North 01º 09' 54" West along the West line thereof, 1,322.02 feet to the place of beginning in the Town of Linn, Walworth County, Wisconsin. Excepting therefrom those land described in Document No. 788581.

ALSO

Part of the South ½ of the Southwest ¼  and part of the Southwest ¼  of the Southeast ¼ of Section 30, in Township 1 North, Range 17 East, in the Town of Linn, Walworth County, Wisconsin, of the Fourth Principal Meridian, being described as follows: Commencing at the Northwest corner of the said South ½ of the Southwest ¼; thence North 89º 44' 55" East along the North line thereof, 1,366.44 feet to the place of beginning; thence continuing North 89º44' 55" East along the North line thereof, 1,202.30 feet to the Northwest corner of the said Southwest ¼ of the Southeast ¼; thence South 01º 27' 58" East along the West line thereof, 247.16 feet; thence North 82º 49' 24" East, 30.15 feet to a line 30.00 feet East of and parallel with the West line of the said Southwest ¼ of the Southeast ¼; thence South 01º 27' 58" East along said parallel line, 476.44 feet; thence South 89º 59' 28" East, 775.27 feet to the West line of Lot 1 if Certified Survey Map No. 4171, being part of the said Southwest ¼ of the Southeast ¼, according to the plat thereof recorded August 25, 2008, as Document No. 744206; thence South 01º 30' 05" East along the West line thereof, 599.42 feet to the South line of the said Southwest ¼ of the Southeast ¼; thence North 89º 59' 28" West along said South line, 805.65 feet to the Southeast corner of the said South ½ of the Southwest ¼; thence South 89º 41' 02" West along the South line thereof, 178.60 feet to the Southeast corner of Lot 1 of Certified Survey Map No. 1161, being part of the said South ½ of the Southwest 1/4, according to the plat thereof recorded July 16, 1981 as Document No. 70985; thence North 00º 19' 47" West along the East 1 line thereof, 305.49 feet to the Northeast corner thereof; thence North 89º 57' 58" West along the North line thereof, 1,029.87 feet; thence North 01º 27' 58" West, 1,008.75 feet to the place of beginning. Excepting therefrom those lands described in Document No. 788581.

Tax Key No. IL 3000006 & IL 3000007

Parcel 2:

Lot 1 of Certified Survey Map No. 1161, as recorded in Volume 5, page 216, as Document No. 70985 located in the Southwest ¼ of Section 30, in Township 1 North, Range 17 East, Walworth County, Wisconsin.

Tax Key No. IA116100001



| | | | |
|---|---|---|---|
| USDA | United States Department of Agriculture | Farm and Foreign Agricultural Services | Farm Service Agency | Wisconsin State Office 8030 Excelsior Drive, Suite 100 Madison, WI 53717 Ph.: 608-662-4422 Fax: 855-758-0755 |

Certified Mail Return Receipt Requested & Regular Mail
7011 0470 0001 4556 4399( Rich & Mary)
70110470 0001 4556 4282 (Four C)

Subject: **NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT**

September 5, 2017

Four C Farms LLC
W4780 Lakeland RD
Walworth, WI 53184-5902

Richard Daniel Cornue
Mary J. Dane-Cornue
W4780 Lakeland RD
Walworth, WI 53184-5902

Dear Sirs:

PLEASE NOTE that the entire indebtedness due on the promissory notes and/or assumption agreements which evidence the loans received by you from the United States of America, acting through the Farm Service Agency, United States Department of Agriculture is now declared immediately due and payable. They are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note | November 14, 2014 | $300,000 |
| Promissory Note | November 14, 2014 | $300,000 |

The promissory notes or assumption agreements are secured by real estate mortgages, deeds of trust, security agreement, and financing statements, etc., described and perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| Mortgage | 111/14/14 | Walworth County | 896326 |
| Financing Statement | 11/3/14 | WDFI | 140014243827 |

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instruments. The reasons for the acceleration of your indebtedness include your monetary default and your inability to maintain cattle numbers.

**EXHIBIT F**

The indebtedness due is $594,551.89 unpaid principal, and $32,727.08 unpaid interest, as of today, plus additional interest accruing at the rate of $47.8969 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances and any shared appreciation. Unless full payment of your indebtedness is received made by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

A) CASH

Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at the above listed address.

If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

B) TRANSFER AND ASSUMPTION

You may transfer the collateral for your loans to someone who is willing and able to assume the debt. Contact FSA immediately if you are interested in this.

C) SALE

You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien. Contact FSA immediately if you are interested in this.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE
YOUR FSA DEBTS.

UNITED STATES OF AMERICA

BY: _____

Tom Brandt
Farm Loan Chief
Farm Service Agency
United States Department of Agriculture

TB:dl

cc:    Farm Loan Chief, FSA/STO
       Farm Loan Specialist, FSA/Green County USDA Service Center
       Farm Loan Manager, FSA/Green County USDA Service Center

Notice to Customers Presenting Checks
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. For inquiries, please contact your local office.

Privacy Act – A Privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html ), or call toll free at (1-866-945-7920) to obtain a copy by mail. Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.

USDA is an equal opportunity employer, provider and lender.

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Richard Daniel Cornue
Mary J. Dane-Cornue
W4780 Lakeland RD
Walworth, WI 53184-5902

9590 9402 3027 7124 1781 85

7011 0470 0001 4556 4399

COMPLETE THIS SECTION ON DELIVERY

A. Signature

☐ Agent
☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

R Cornue                              9-8-1

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

Lakville Rd

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
  (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

This form is available electronically.

| FSA-2561 | U.S. DEPARTMENT OF AGRICULTURE | Position 2 |
|---|---|---|
| (11-04-08) | Farm Service Agency | |

## STATEMENT OF ACCOUNT

Check here ☐ if FSA-2561A (Continuation) is attached.

**1. Full Case Number**

58-064-7344

**2. To (FSA requesting office)**
WISCONSIN STATE FSA OFFICE 58-300

**3. This is to certify that:**

**A. Name(s)**

FOUR C FARMS LLC                                    and                                    of

**B. Address**

is *(are)* indebted to the United States of America as reflected by the following statement of account:

| 4. Transactions Have Been Recorded Through | 5. Interest has been accrued through *(Show date)* | 6. Type of Statement *(Check Appropriate Box)* |
|---|---|---|
| A. Charges *(Show date)* 11/14/2014 — B. Credits *(Show date)* 06/27/2016 | 10/30/2017 | ✓ A. Status by Loan Type<br>B. Advances in Detail<br>C. Detail Status of Individual Accounts |

| 7. DATE | 8. LOAN CODE | | | | 9. LOAN ADVANCES AND OTHER CHARGES | 10. PAYMENTS AND CREDITS | | 11. UNPAID BALANCES | | 12. DAILY INTEREST ACCRUAL |
|---|---|---|---|---|---|---|---|---|---|---|
| | A. KIND | B. FUND | C. INTEREST RATE | D. LOAN NO. | | A. INTEREST | B. PRINCIPAL | A. INTEREST | B. PRINCIPAL | |
| | | | | | | NOTE | ACCOUNT | | | |
| 11/14/14 | 01 | 44 | 02.1250 | 01 | 300,000.00 | | | | | |
| TOTAL | 01 | 44 | 02.1250 | 01 | 300,000.00 | 4,675.94 | 3,794.82 | 13,506.50 | 296,205.18 | 17.2448 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **13. TOTALS:** | | | | | 300,000.00 | 4,675.94 | 3,794.82 | 13,506.50 | 296,205.18 | 17.2448 |

| 14. Name of Authorized Official | 15. Signature of Authorized Official |
|---|---|
| LAWRENCE MULLEN | *Lawrence Mullen* |

| 16. Title of Authorized Official | 17. Date of Certification |
|---|---|
| ACCOUNTING TECHNICIAN | 10/30/2017 |

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

**Exhibit G**

This form is available electronically.

| **FSA-2561** | U.S. DEPARTMENT OF AGRICULTURE | Position 2 |
|---|---|---|
| (11-04-08) | Farm Service Agency | |

## STATEMENT OF ACCOUNT

Check here ☐ if FSA-2561A (Continuation) is attached.

**1. Full Case Number**

58-064-7344

**2. To (FSA requesting office)**
WISCONSIN STATE FSA OFFICE 58-300

**3. This is to certify that:**

**A. Name(s)**

FOUR C FARMS LLC                    and                    of

**B. Address**

is *(are)* indebted to the United States of America as reflected by the following statement of account:

**4. Transactions Have Been Recorded Through**

| A. Charges *(Show date)* | B. Credits *(Show date)* |
|---|---|
| 11/14/2014 | 11/16/2015 |

**5. Interest has been accrued through *(Show date)***
10/30/2017

**6. Type of Statement (Check Appropriate Box)**

| ✓ | A. Status by Loan Type |
| | B. Advances in Detail |
| | C. Detail Status of Individual Accounts |

| 7. DATE | 8. LOAN CODE | | | | 9. LOAN ADVANCES AND OTHER CHARGES | 10. PAYMENTS AND CREDITS | | 11. UNPAID BALANCES | | 12. DAILY INTEREST ACCRUAL |
|---|---|---|---|---|---|---|---|---|---|---|
| | A. KIND | B. FUND | C. INTEREST RATE | D. LOAN NO. | | A. INTEREST | B. PRINCIPAL | A. INTEREST | B. PRINCIPAL | |
| | | | | | | NOTE | ACCOUNT | | | |
| 11/14/14 | 00 | 41 | 03.7500 | 02 | 300,000.00 | | | | | |
| TOTAL | 00 | 41 | 03.7500 | 02 | 300,000.00 | 11,310.71 | 1,653.29 | 21,854.92 | 298,346.71 | 30.6521 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **13. TOTALS:** | | | | | 300,000.00 | 11,310.71 | 1,653.29 | 21,854.92 | 298,346.71 | 30.6521 |

**14. Name of Authorized Official**

LAWRENCE MULLEN

**15. Signature of Authorized Official**

*Lawrence Mullen*

**16. Title of Authorized Official**

ACCOUNTING TECHNICIAN

**17. Date of Certification**

10/30/2017

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box: ☐ Green Bay Division ☐ Milwaukee Division

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

Case 2:18-cv-00212-PP Filed 02/08/18 Page 1 of 2 Document 1-8

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**      **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**      **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**      **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**      **Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**      **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**      **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.      Example:      U.S. Civil Statute: 47 USC 553
                                                           Brief Description: Unauthorized reception of cable service

**VII.**      **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**      **Related Cases**.  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.